**Charles Lee HOWARD, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–119–CR.**

Court of Appeals of Texas,
Fort Worth.

July 17, 1986.

Hartley, Eakman & Bodenhamer, Glen E. Eakman, Fort Worth, for appellant.

Tim Curry, C. Chris Marshall, Scott Wisch and Delonia A. Watson, Fort Worth, for State.

Before FENDER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from a conviction for the offense of aggravated delivery of a controlled substance. *See* TEX.REV.CIV. STAT.ANN. art. 4476–15 sec. 4.031(c) (Vernon Supp.1985). The jury found appellant guilty and the court assessed punishment at 15 years in the Texas Department of Corrections.

We affirm.

Officer G.M. Dunn, a Department of Public Safety Officer, testified that on November 6, 1984, he met with an informant for the purpose of setting up a drug purchase. The purchase was to be from Barbara Harrison and Gary Boyer to take place in the parking lot of Northeast Mall. There was a long conversation between Officer Dunn and Barbara Harrison but no purchase was consummated until Gary Boyer drove up in a vehicle followed by appellant, Charles Lee Howard, who was on a motorcycle. Appellant told Officer Dunn to "show him some money." When the officer did so, appellant handed Officer Dunn two envelopes of what was later determined to be amphetamine. Officer Dunn then arrested appellant.

In his first ground of error appellant contends that the trial court erred in overruling appellant's objection to testimony from Officer Dunn concerning hearsay and extraneous offenses allegedly committed by appellant. Appellant complains of the following which occurred at trial:

BY MR. BLANKINSHIP [State's Attorney]:

Q. When you—at approximately 4:30, when Harrison showed up, did she approach your car?

A. Yes, she did. As I stated previously, she introduced herself as Barbara and stated that Charlie was picking up the amphetamine and would be there shortly.

Q. Was anything else said at that time?

MR. VERNON [Attorney for Appellant]: For clarification, could we have a running, continuing exception to any of this hearsay testimony rather than interrupting?

THE COURT: Yes. And I overrule your objection.

THE WITNESS: She entered into a lengthy discussion at that time while we waited for someone to arrive with the amphetamine, during which time she spoke about the quality of the amphetamine, that it would be 92 to 96 percent pure. She discussed it would be snow white in color. She discussed the fact that her associates, Charlie and Raymond, who I didn't know, had been ripped off or robbed recently during a recent delivery of this stuff at one time as much as for 30 thousand dollars.

BY MR. BLANKINSHIP:

Q. Tell the Jury what rip off means.

A. Rip off—

MR. SMITH: That is irrelevant and has no probative value in this cause. It's not what Mr. Howard is being tried or charged with. Might indicate some extraneous offense.

THE COURT: I think the question was just to explain or define what rip off was. I'm going to overrule your objection.

MR. SMITH: Note our exception.

THE WITNESS: Rip off commonly refers to a set-up delivery at which time someone is posing to purchase drugs from someone who is selling drugs and at which time he might show up with it, they may go ahead and steal the amphetamine and rather than actually purchase it, is what it commonly refers to.

BY MR. BLANKINSHIP:

Q. Did she talk about a particular rip off with Charlie and Raymond?

A. Yes. She said they had been ripped off in this nature twice recently, one for 30 thousand dollars' worth.

Q. Did she tell you what the source of this amphetamine was?

A. She just stated that it was coming from Charlie and Raymond.

Q. Okay. Did she say anything about the group that she was working with and selling this amphetamine and dope they had in the recent past?

MR. SMITH: Objection, Your Honor. It's irrelevant and has no probative value to anything. Just to inflame the minds of the Jury. Mr. Howard is simply charged with delivery to this particular officer, if I understand the case thus far.

THE COURT: I'm inclined to sustain that objection Mr. Blankinship.

MR. BLANKINSHIP: Okay.

Concerning the objection as to extraneous offenses, it is fundamental principle of law that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). In recognition of this principle, it has consistently been held that proof of prior specific acts of misconduct, similar happenings or extraneous offenses committed by the accused is not probative of the contested material issues in the case and is inadmissible. *See Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983); *Davis v. State*, 645 S.W.2d 288, 293 (Tex.Crim. App.1983); *Bates v. State*, 643 S.W.2d 939, 943 (Tex.Crim.App.1982).

■ However, the evidentiary policies generally precluding admission of evidence of extraneous conduct must in some circumstances give way. Extraneous transactions constituting offenses shown to have been committed by the accused may become admissible upon a showing by the prosecution both that the transaction is *relevant* to a *material* issue in the case, and

the probative value of the evidence outweighs its inflammatory or prejudicial potential. *See Rubio v. State*, 607 S.W.2d 498, 506 (Tex.Crim.App.1980) (emphasis in original). The material issues in a criminal prosecution generally consist of the elements of the offense charged. *Davis*, 645 S.W.2d at 293.

■ Knowledge and intent are material issues in a criminal prosecution for delivery because they are elements of the offense charged. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15 sec. 4.032 (Vernon Supp.1985). *See also Davis*, 645 S.W.2d at 293.

Furthermore, the issue of whether appellant had the requisite mental state was a *contested issue*. Appellant's attorneys argued before the jury that the State had not met its burden of proof to show knowledge and intent. They argued that the State did not prove that appellant knew that it was amphetamine that he was delivering.

■ We hold that the evidence of prior sale of drugs by appellant where he was "ripped off" was admissible under the exception to the general rule concerning extraneous offenses. The extraneous offenses were admissible to prove intent and knowledge, especially since these issues were contested by appellant. *See Davis*, 645 S.W.2d at 293; *Elkins*, 647 S.W.2d at 665.

That intent cannot be inferred from the act itself, as is true in this case, will almost invariably mean that other evidence relevant to that intent, even though such evidence constitutes an extraneous transaction or offense, will be more probative than prejudicial. *See Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Crim.App.1985). This is really only to say that where "the defendant's conduct, his remarks and all surrounding circumstances" fail of themselves to establish the requisite intent, the need on the part of the State to present some alternate indicia of that intent will more than likely transcend any prejudice resulting therefrom. *See id.*

The evidence is admissible even though the State was premature[1] in its effort to rebut appellant's defense that he did not know that it was amphetamine he was delivering. *See Jones v. State,* 587 S.W.2d 115, 120 (Tex.Crim.App.1979) (opinion on motion for rehearing). The erroneous receipt of evidence of an extraneous offense was rendered harmless based on the subsequent actions of appellant at trial. *See id; Flores v. State,* 151 Tex.Cr.R. 478, 209 S.W.2d 168 (1948).

Appellant also contends that Officer Dunn's testimony concerning what Barbara Harrison told him about appellant's prior drug sales was hearsay. Appellant's running objection concerning hearsay was overruled by the trial court. We hold that this testimony that appellant was "ripped off" in prior drug sales was admissible to show knowledge or intent, *see Forsythe v. State,* 664 S.W.2d 109, 115 (Tex.App.—Beaumont 1983, pet. ref'd), which were issues in the case. It is an exception to the hearsay rule where evidence is offered to show knowledge or intent where those issues are material. *See id. See also* R. Ray, Texas Law of Evidence, sec. 799 (Texas Practice 3rd Ed.1980). Appellant's first ground of error is overruled.

In his second ground of error appellant contends that the trial court erred in overruling his oral motion for continuance. Appellant sought a continuance so that he could get another attorney because, he contended, he could not work with his attorney. One prior written motion for continuance had been granted. Appellant did not file a written motion for his second motion for continuance but instead asked for it orally. An oral motion for continuance presents nothing for review. *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Crim.App. 1984); TEX.CODE CRIM.PROC.ANN. art.

29.03 (Vernon Pamph.Supp.1986). Appellant's second ground of error is overruled.

The judgment is affirmed.

---

1. The requirement that the material issue be contested as a prerequisite to admission of extraneous acts in proof thereof, in either a direct *or* circumstantial case ... is no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case. It is really, therefore, an aspect of the "more probative than prejudicial" analysis, since, as we note *post,* the greater the State's need to resort to extraneous offenses to prove up some material issue in the case, the higher will be the probative value of that offense in relation to its potential for prejudice.

It is understandable that this requirement has been ignored in those cases "where intent or guilty knowledge is an essential element ... and cannot be inferred from the act itself." *Morgan,* 692 S.W.2d 877, 880 N. 3.